45047.   CITY OF ATLANTA v. MAPEL.

ARGUED JANUARY 13, 1970—DECIDED MARCH 12, 1970—
REHEARING DENIED APRIL 1, 1970.

*Henry L. Bowden, Thomas F. Choyce,* for appellant.

*Albert M. Horn,* for appellee.

HALL, Presiding Judge. "The American rules governing the tort liability of municipal corporations make a curious patchwork of immunity and responsibility. The dominent motif is a supposed distinction between governmental and proprietary functions. . . No satisfactory test has been devised for distinguishing [between these] functions. . . Little wonder that courts and commentators have despaired of finding a rational and consistent key to the distinction." 2 Harper & James, The Law of Torts 1619-1623, § 29.6.

Probably as both cause and effect of this pattern, there has been a definite trend away from the absolute defense of governmental immunity in most jurisdictions. See Alstyne, Governmental Tort Liability: A Decade of Change, 1966 U. Ill. L. Forum 919. In a few states it has been legislatively abolished, but more often the response to a conscience-shocking case has been a judicial hairline distinction—another piece on the patchwork.

Until very recently, Georgia courts have refused to participate in the quilting bee. With a few classical exceptions (e.g., streets and utilities) we have found virtually every municipal activity to be governmental and therefore protected from tort liability. Perhaps an indication of a new attitude is the *result* reached in *Town of Fort Oglethorpe v. Phillips,* 224 Ga. 834 (165 SE2d 141), where the Supreme Court declared that the maintenance of a traffic signal was governmental, but held that the plaintiff had a cause of action in nuisance. "This expansion of municipal liability has received mixed reaction. . . Nevertheless, the Supreme Court's decision did produce the effect of making a new inroad on the doctrine of municipal immunity. Although any inroad is welcomed, it is questionable whether *Phillips* will prove to be a benefit or a burden." Comment, 5 Georgia S.B.J. 474, 489 (1969).

Elsewhere in the country, when golf courses have been specifically considered, the "general rule" is to find them proprietary. 18 McQuillin, Law of Municipal Corporations, 455, § 53.115. However, the cases are few, no two have the same rationale; and

none has a statutory and case law background duplicating Georgia's. While we have had no golf course cases, we do have an established line holding parks and recreational facilities to be governmental. *Cornelisen v. City of Atlanta*, 146 Ga. 416 (91 SE 415); *City of Warrenton v. Smith*, 149 Ga. 567 (101 SE 681); *Autrey v. City Council of Augusta*, 33 Ga. App. 757 (127 SE 796); *Stubbs v. City of Macon*, 78 Ga. App. 237 (50 SE2d 866).

Faced with similar precedent, a California court found this ingenious answer: "The underlying purpose behind the playing of a game of golf, however, is undoubtedly pleasure or amusement. True, it provides some exercise and gets the player out into the fresh air and sunshine, but a walk in the park would serve the same purpose. Golf is a game of skill and rivalry, with a decided social aspect, and it is doubtful that most people who play consider health benefits to be the primary objective. Some even ride between shots in small vehicles designed for this purpose, and have caddies to carry their clubs and equipment, which indicates that exercise is for them not the foremost consideration. A golf course does not serve the public generally but only those who play the game. It is designed for a single purpose, while a public park is devoted to no specific use and serves many purposes for the public in general. Many private golf courses are maintained, some for profit, and others as an adjunct to private clubs or associations. It is true that a public golf course undoubtedly makes the sport available to a segment of our population to which private courses would not be accessible, but this alone does not constitute it a governmental function. It is actually in competition with other courses, and in its clubhouse commercial enterprises usually are carried on where commercial rates are charged for commodities and services. We are satisfied, therefore, that the primary purpose served by the operation of a public golf course is pleasure or amusement, and that in the present case the City of San Mateo was acting in its proprietary capacity and therefore owed its invitees the duty of exercising ordinary care for their safety." Plaza v. City of San Mateo, 123 Cal. App. 2d 103, 111 (266 P2d 523). It should be noted that this court only had to deal with prior holdings that parks are governmental because they promote the public health.

Georgia has a "consistent key." Laid down in 1916 and scrupulously followed since, is this test: "Where a city maintains a park primarily for the use of the public, intended as a place of resort for pleasure and promotion of health of the public at large, its operation is in virtue of the governmental powers of the municipality, and no municipal liability would attach to the non-performance or improper performance of the duties of the officers, agents, or servants of the city in respect to keeping the park safe for use by members of the general public. It would not affect the public character of the duties of the officers, agents, or servants of the city that a purely incidental profit might result to the city from its operation or management of the park. But if the city, having charter authority, maintain the park primarily as a source of revenue, the duty of maintaining it in a safe condition for the use for which it is intended would be ministerial, and municipal liability would attach for breach of such duty." *Cornelisen v. City of Atlanta,* 146 Ga. 416 (1, 2), supra. An example of the tenacity with which this test has been followed in a variety of activities is this court's holding that the profitable manufacture and sale of sanitary toilets was governmental as the city's charter granted no authority to engage in this specific activity primarily as a source of revenue. *Watkins v. City of Toccoa,* 55 Ga. App. 8 (189 SE 270).

The test neatly bars the door to most municipal activity. Cities don't operate facilities *primarily* as a source of revenue, and the legislature does not ordinarily give this kind of charter authority. In fact, the opposite is more often the case—a potential profit-making activity is restricted by charter to a break-even operation. See *City of Rome v. Justice,* 40 Ga. App. 196 (149 SE 88).

It should be fundamental that any city activity or operation is carried on *primarily* for the public benefit, even if for only a limited segment of the public. To make this the criterion for the governmental-proprietary distinction is, we believe, patently ridiculous. Nevertheless, we must follow the ratio decidendi of the *Cornelisen* case. We have not overlooked *City of Atlanta*

*v. Rich,* 64 Ga. App. 193 (12 SE2d 436) where this court managed to get a cemetery (operated at a loss) classified as proprietary. The reasoning was labored and the case has added nothing but confusion to the subject. We prefer not to make a bad situation worse.

The appellee makes a logical argument in saying that even if this is a governmental function, the damages resulting from tortious performance of governmental functions should not be borne solely by the injured individual—that they should be shouldered by the government and distributed to the taxpayers who are the ultimate beneficiaries of public activities. However, that argument addresses itself to the legislative branch of government. In Georgia, the legislature has unfortunately codified the doctrine of municipal immunity into statutory law (*Code* § 69-301) to the extent that the judicial branch of government has been pre-empted from effectively destroying that which it created. See Comment, 5 Georgia S.B.J. 494 (1969).

We therefore have no alternative but to hold that the trial court erred in denying the city's motion for summary judgment.

*Judgment reversed. Bell, C. J., Jordan, P. J., Eberhardt, Pannell, Deen, Quillian and Whitman, JJ., concur. Evans, J., dissents.*

EVANS, Judge, dissenting. I dissent from the judgment of reversal and the opinion of the majority. While I agree that our rules governing tort liability in regard to suits against municipal corporations make a "curious patchwork of immunity and responsibility" and that no satisfactory test has been devised for distinguishing between governmental and proprietary functions, I think that, in this instance, the evidence is insufficient to establish as a matter of law, that maintenance of the golf course by the City of Atlanta is a governmental function. By affidavit, the General Manager of Parks swore that the golf courses of the City of Atlanta are a part of the Parks and Recreation administration of the City (including cemeteries); are not maintained for revenue purposes; the fees charged are regulatory in nature only and are only maintained to prevent overcrowding; and the "Bobby Jones Golf Course is a part of a larger park known as Atlanta Memorial Park." Considering all of his statements as

being true, this does not establish that a golf course, maintained by the City of Atlanta, becomes a governmental function, as distinguished from a cemetery, and therefore becomes a park. It is clear that the reasoning of counsel for the city was an attempt to show the maintenance of a municipal golf course is a governmental function as opposed to a ministerial function and therefore comes within the rule established in *Cornelisen v. City of Atlanta*, 146 Ga. 416 (91 SE 415). To this I cannot agree. I cannot see any real difference between the maintenance of a cemetery where the lot holders pay for their easements (thereby excluding the general public, or the public at large) and a golf course in which greens fees are charged, and only those members of the public who pay the fee may play, while other members of the public, who merely wish to walk around in the open area, enjoying the sunlight and other pleasures of a walk in a park, are excluded. A golf course is not a park, and I am certain that here the general public is excluded from its use. In fact, the affidavit of Mr. Delius shows clearly that greens fees are charged for the purpose of excluding the public generally, to prevent overcrowded conditions, and to allow only the playing of golf thereon. While his affidavit attempts to establish that this is a mere area of a park, nevertheless, I do not feel that the evidence submitted on summary judgment has been sufficient to pierce the allegations of the petition, and establish, as a matter of law, that a golf course becomes a governmental function rather than a ministerial one. Lacking any other evidence than that submitted on summary judgment here, I would be willing to decide that the City of Atlanta is acting in a proprietary capacity similar to that of the City of San Mateo (Plaza v. City of San Mateo, 123 Cal. App. 2d 103, cited in the majority opinion). While, for some other reason, the petitioner might not be able to maintain his action or prove his complaint as alleged, until other evidence is shown, under the new Civil Practice Act, the court below was correct in its ruling denying summary judgment in favor of the City. As to the rules of evidence applicable to motions for summary judgment, see *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 4 (126 SE2d 442).