A07A2066. WEAVER et al. v. CITY OF STATESBORO et al.
(653 SE2d 765)

BLACKBURN, Presiding Judge.

In this tort action for personal injuries and property damage arising from an auto collision, plaintiffs Lora Weaver, Richard Weaver, and Deal's Heating and Air appeal the grant of summary judgment to the defendants City of Statesboro (the City) and its police officer Richard Saxon, arguing that sovereign and official immunity did not bar their actions against the defendants. We hold that as to the action against the City, its purchase of liability insurance covering the incident waived its sovereign immunity for the officer's alleged negligence in running his patrol car into the plaintiffs' vehicle to the extent of its liability insurance coverage as authorized by OCGA § 33-24-51. Accordingly, we reverse the grant of summary judgment to the City. As to the action against the officer personally, we hold that official immunity barred that action because the undisputed evidence showed that he was exercising a discretionary function when he decided to rush to a congested intersection to direct traffic. Accordingly, we affirm the grant of summary judgment to the officer.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that on September 29, 2003, pursuant to an assignment received from his superiors, Officer Saxon (employed by the City) was driving his patrol car to a downtown intersection near a parade route to direct traffic. As he was about a mile from the intersection, the traffic on the road approaching the intersection was already backed up to where the officer was in his vehicle. Deciding that he needed to rush to the intersection to alleviate the obvious traffic problem and to prevent possible accidents that could arise from such traffic congestion, Officer Saxon pulled into the empty left lane (designed for traffic heading away from the downtown intersection) and accelerated toward the intersection at a speed of 45 mph, which exceeded the posted speed limit of 35 mph. Some evidence showed that he failed to activate his emergency lights and siren, as required by OCGA § 40-6-6 (c).

At this point, Richard Weaver, who was on a cross street driving a van owned by Deal's Heating and Air (and in which his wife Lora

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Weaver was a passenger), stopped at a stop sign and then proceeded carefully from the cross street to make a left hand turn through a gap in the heavy traffic into the empty lane leading away from the downtown intersection. He looked in both directions, focusing particularly to his right to discern any traffic coming from the direction from which any traffic should have been coming in that lane. Neither he nor his wife saw or heard any traffic in the lane, and therefore Mr. Weaver proceeded into the lane, only to be struck by Officer Saxon's vehicle from the left, whose vehicle was traveling in the wrong direction in that lane.

The Weavers and the van owner sued the City and Officer Saxon for injuries and personal property damage caused by the collision. Citing sovereign and official immunity, the City and Officer Saxon moved for summary judgment, which the trial court granted. Plaintiffs appeal.

1. *Sovereign immunity*. We first address the summary judgment granted to the City. "The doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit." *Cameron v. Lang*.[2] The Georgia Constitution provides that only the General Assembly may waive the immunity of municipalities by law, which has been interpreted to require a specific statute from the legislature in which that immunity is expressly waived. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. See *Cameron*, supra, 274 Ga. at 126 (3); *CSX Transp. v. City of Garden City*[3] (cities enjoy sovereign immunity except to the extent such is expressly waived by the Georgia legislature via statute).

Pursuant to this constitutional provision, the General Assembly enacted OCGA § 36-33-1, which provides:

> (a) Pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, the General Assembly, except as provided in this Code section and in Chapter 92 of this title, declares it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. A municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51 or 36-92-2, or unless the policy of insurance

---

[2] *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001).
[3] *CSX Transp. v. City of Garden City*, 277 Ga. 248, 249-250 (1) (588 SE2d 688) (2003).

issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy. This subsection shall not be construed to affect any litigation pending on July 1, 1986.

(b) Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable.

Two of the waivers of a municipality's sovereign immunity as set forth in the statute (and in the statutes referenced therein) possibly apply here.[4] They include the waiver of immunity to the extent that: (a) a city is negligent or performs other improper actions in the carrying out of its ministerial duties, which generally refer to proprietary functions as opposed to governmental functions (see *Rutherford v. DeKalb County*[5] (a city can be liable for functions that are "nongovernmental, i.e., within the proprietary or ministerial (rather than legislative or judicial) realm of a municipal corporation's powers")); and (b) a city purchases motor vehicle liability insurance as provided in OCGA § 33-24-51 (a), with the city's being liable only to the extent of that insurance. *Cameron*, supra, 274 Ga. at 126 (3).

(a) *Governmental vs. ministerial distinction.* With regard to the waiver of sovereign immunity as to ministerial functions (OCGA § 36-33-1 (b)), a city " 'is not liable for the negligence or misconduct of its officers in the performance of governmental functions,' " *City of Atlanta v. Fry*,[6] but may be liable for negligence or misconduct of its officers in the performance of proprietary or ministerial functions. *Rutherford*, supra, 287 Ga. App. 368 (1) (a). In this regard, it is well established that city police officers engaged in city police work are performing a governmental function to which this waiver of a city's sovereign immunity does not apply. See OCGA § 36-33-3 ("[a] municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law"); *Fry v. City of Atlanta*[7] (the operation of a police department

---

[4] Chapter 92 of Title 36 (which includes OCGA § 36-92-2) applies only to "claims [or] causes of actions arising out of events occurring on or after January 1, 2005." OCGA § 36-92-5. The collision here occurred on September 29, 2003.

[5] *Rutherford v. DeKalb County*, 287 Ga. App. 366, 368 (1) (a) (651 SE2d 771) (2007).

[6] *City of Atlanta v. Fry*, 148 Ga. App. 269 (251 SE2d 90) (1978), aff'd, *Fry v. City of Atlanta*, 243 Ga. 517 (255 SE2d 48) (1979).

[7] Supra.

is function "governmental in nature"); *Carter v. Glenn*[8] ("[t]he operation of a police department . . . is a discretionary governmental function of the municipality as opposed to a ministerial, proprietary, or administratively routine function") (punctuation omitted). Accordingly, regardless of whether Officer Saxon acted negligently or recklessly or for that matter with actual malice, the City has sovereign immunity as to Officer Saxon's actions in carrying out his police duties unless some other waiver applies. See *Williams v. Solomon*[9] (regarding governmental functions, "the City would not be liable even if [the police officer] had committed an intentional tort").

(b) *Liability insurance under OCGA § 33-24-51.* A second waiver does apply here so as to waive the City's sovereign immunity to a certain extent. OCGA § 33-24-51 (b) provides a waiver of a city's immunity even when the city is performing governmental or police functions. "That immunity may be waived . . . to the extent the City has purchased liability insurance to cover [Officer Saxon's] actions in operating his police car. OCGA § 33-24-51 (b); *City of Thomaston v. Bridges.*"[10] *Williams*, supra, 242 Ga. App. at 810 (3). See *McLemore v. City Council of Augusta*;[11] *Ekarika v. City of East Point*[12] (OCGA § 33-24-51 (b) waives immunity even for police functions of city). Thus, the City "may be liable for [Officer Saxon's] negligence in performing [his] job to the extent the [C]ity has waived its governmental immunity through the purchase of liability insurance." *Cameron*, supra, 274 Ga. at 127 (3). Notably, this waiver applies even if Officer Saxon acted only negligently (id.; cf. OCGA § 33-24-51 (b)), and further applies even if Officer Saxon personally may be immune from liability under the doctrine of official immunity. *Gilbert v. Richardson.*[13]

OCGA § 33-24-51 (a) authorizes a city to purchase liability insurance for personal injury or property damage arising by reason of the city's ownership, maintenance, operation, or use of any motor vehicle. It is undisputed that the City purchased motor vehicle liability insurance in the amount of $1 million through the Georgia Interlocal Risk Management Agency (GIRMA), which policy covered the collision here. Cf. OCGA § 36-85-1 et seq. The Supreme Court of Georgia has held that such insurance waives a city's sovereign immunity to the extent of the insurance (despite the provisions of

[8] *Carter v. Glenn*, 249 Ga. App. 414, 417 (2) (548 SE2d 110) (2001).
[9] *Williams v. Solomon*, 242 Ga. App. 807, 810 (3) (531 SE2d 734) (2000), aff'd, *Cameron*, supra, 274 Ga. 122.
[10] *City of Thomaston v. Bridges*, 264 Ga. 4, 7, n. 7 (439 SE2d 906) (1994).
[11] *McLemore v. City Council of Augusta*, 212 Ga. App. 862, 863 (2) (a) (443 SE2d 505) (1994).
[12] *Ekarika v. City of East Point*, 204 Ga. App. 731, 732-733 (420 SE2d 391) (1992).
[13] *Gilbert v. Richardson*, 264 Ga. 744, 753-754 (7) (452 SE2d 476) (1994).

OCGA § 36-85-20, which statute the Court declared unconstitutional from its inception). *Gilbert*, supra, 264 Ga. at 751-752 (5). See *CSX Transp.*, supra, 277 Ga. at 251 (2) ("[w]e have held that the purchase of a GIRMA coverage agreement as authorized by OCGA §§ 36-85-1 to 36-85-20 constitutes the purchase of liability insurance"). Because the City waived its sovereign immunity by purchasing the GIRMA policy, the trial court erred in granting the City summary judgment.

The City and the plaintiffs have raised some irrelevant arguments, which we discuss here to clarify any misunderstandings. First, the parties refer to Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983 (as amended in 1991) as the source of a city's sovereign immunity. However, that provision has been held not to apply to municipalities. *City of Thomaston*, supra, 264 Ga. at 6-7. Rather, the source of a city's sovereign immunity arises from Art. IX, Sec. II, Par. IX of the Georgia Constitution and from OCGA §§ 36-33-1 and 36-33-3. See *McLemore*, supra, 212 Ga. App. at 863 (1), (2); *City of Atlanta v. Mapel*[14] ("[i]n Georgia, the legislature has . . . codified the doctrine of municipal immunity into statutory law").

Second, plaintiffs refer to OCGA § 40-6-6 (d) as a basis for arguing that a showing that Officer Saxon acted recklessly somehow affects whether the City enjoys sovereign immunity for his actions or whether Officer Saxon enjoys official immunity for his actions. However, this statute expressly provides that it applies "only to issues of causation and duty and shall not affect the existence or absence of immunity which shall be determined as otherwise provided by law." OCGA § 40-6-6 (d) (3). Because we determine immunity issues before we address causation issues, *Cameron*, supra, 274 Ga. at 124 (1), we do not address this statute in our discussions of immunity. We do address it in the causation discussion in Division 3 below.

Finally, it is important to note that the Georgia Tort Claims Act (OCGA § 50-21-20 et seq.) is inapplicable, as that statute by its express terms excludes municipalities from its coverage. See OCGA § 50-21-22 (5).

2. *Official immunity.* We now address the summary judgment granted to Officer Saxon. This requires a review of the doctrine of official or qualified immunity, which offers public officers and employees limited protection from suit in their personal capacity. *Cameron* explains this doctrine:

> Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness,

---

[14] *City of Atlanta v. Mapel*, 121 Ga. App. 567, 571 (174 SE2d 599) (1970).

> malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.[15]

(Punctuation and footnotes omitted.) Supra, 274 Ga. at 123 (1). "The question of whether a government official is entitled to qualified immunity is a question of law for the court to decide." (Punctuation omitted.) *Conley v. Dawson.*[16]

(a) *Reckless conduct not enough for discretionary acts.* With regard to city employees and officers, *Cameron* held that the protection provided to county and State employees under the 1991 amendment to the Georgia Constitution[17] was consistent with prior law and should be applied to city employees also. Supra, 274 Ga. at 124-125 (2). *Cameron* concluded: "Both our case law and our reasons for developing the doctrine provide authority for applying qualified immunity in the same manner to both municipal police officers and county law enforcement officers." Id. at 125 (2).

The importance of this holding is that the 1991 amendment provides that unless the public officer is performing a ministerial function, he may only be liable "for injuries and damages if [he] act[s] with actual malice or with actual intent to cause injury in the performance of [his] official functions."[18] *Merrow v. Hawkins*[19] specifically held that this language requiring that the public officer act "with actual malice or with actual intent to cause injury" excludes acts of lesser culpability that exhibit only implied malice or a reckless disregard for human life or rights. See *Phillips v. Hanse*[20] ("actual malice requires more than reckless conduct"; summary judgment to county police officer affirmed); *Williams*, supra, 242 Ga. App. at 809 (1) ("the Supreme Court of Georgia has held that conduct exhibiting a reckless disregard for the safety of others does not equate with the actual malice necessary to defeat a claim of official immunity";

---

[15] We note that OCGA § 36-92-3 (a) bars all suits against public employees for torts involving the use of a government motor vehicle while in the performance of their official duties. But as noted earlier, this chapter of the Code is inapplicable here, as it applies only to claims arising out of events occurring on or after January 1, 2005. OCGA § 36-92-5.

[16] *Conley v. Dawson*, 257 Ga. App. 665, 668 (2) (572 SE2d 34) (2002).

[17] Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

[18] Id.

[19] *Merrow v. Hawkins*, 266 Ga. 390, 391-392 (2) (467 SE2d 336) (1996).

[20] *Phillips v. Hanse*, 281 Ga. 133, 136 (2) (637 SE2d 11) (2006).

summary judgment to city police officer affirmed). Thus, *Merrow* noted that prior decisions such as *Logue v. Wright*,[21] which indicated that public officials would be liable for "acts involving reckless disregard for the safety of others," were superseded by the 1991 amendment and were therefore no longer "good law." *Merrow*, supra, 266 Ga. at 392 (2). Accordingly, application of this standard of more culpable conduct to the municipal police officer in *Cameron*, where there was no evidence that the officer acted with actual malice or actual intent to cause injury, caused the Supreme Court of Georgia to affirm the summary judgment granted to that officer by the trial court. *Cameron*, supra, 274 Ga. at 125-126 (2).

Here, there is no allegation let alone evidence that Officer Saxon acted with actual malice or with actual intent to cause injury. Therefore, unless the plaintiffs can show that Officer Saxon was performing a ministerial function, he is immune from liability under the doctrine of official immunity.

(b) *Officer Saxon was performing a discretionary function.* The relevant[22] distinction between ministerial and discretionary functions is well established:

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*Nichols v. Prather.*[23] See *Daley v. Clark.*[24]

Based on this definition, *Logue*, supra, 260 Ga. at 208 (1), held that when the collision at issue occurred while the officer was answering a call regarding a fight, "[t]he decision to rush to the scene of the disorder lay within [the officer's] discretion." Responding to emergency situations or calls (as opposed to engaging in routine patrols) has been consistently held to involve the exercise of personal deliberation and judgment by the officer and therefore not to involve mere ministerial functions. See *Phillips*, supra, 281 Ga. at 134 (1)

---

[21] *Logue v. Wright*, 260 Ga. 206, 206-207 (1) (392 SE2d 235) (1990).

[22] The definition of "discretionary function" found in the Georgia Tort Claims Act (see OCGA § 50-21-22 (2)) does not apply to city employees since cities were expressly excluded from that Act. See OCGA § 50-21-22 (5). See also *Banks v. Happoldt*, 271 Ga. App. 146, 149, n. 10 (608 SE2d 741) (2004).

[23] *Nichols v. Prather*, 286 Ga. App. 889, 896 (4) (650 SE2d 380) (2007).

[24] *Daley v. Clark*, 282 Ga. App. 235, 243 (2) (a) (638 SE2d 376) (2006).

(decision to initiate and continue high-speed chase is discretionary function); *Smith v. Bulloch County Bd. of Commrs.*[25] ("the process of driving the ambulance in responding to the emergency situation was discretionary and not ministerial"); *Tkacik v. Chriss*[26] ("[r]ushing to the assistance of a fellow officer in response to an emergency call [is] a discretionary act"); *Johnson v. Gonzalez*[27] ("[b]ecause the call removed [the officer] from his routine patrol, his acts in response to the call were discretionary").

Here, the evidence is undisputed that Officer Saxon, upon seeing the traffic congestion, concluded that he needed to rush to his assignment to direct traffic at the crossing intersection so as to relieve the congestion and to eliminate the hazardous conditions created by the congestion, which included possible accidents that might arise from drivers' dealing with the congestion. Just as in *Logue*, supra, 260 Ga. at 208 (1), "[t]he decision to rush to the scene of the disorder lay within his discretion." Concluding that the circumstances constituted an emergency in that a hazardous condition needed to be quickly eliminated, Officer Saxon was performing a discretionary function when he decided to rush to his assignment at the crossing intersection to direct the traffic.

Accordingly, because Officer Saxon was not performing a ministerial function, the absence of any evidence that he was acting with actual malice or with actual intent to injure immunizes his actions under the doctrine of official immunity. The trial court did not err in granting him summary judgment.

3. *Causation.* The only claim that survives the bars of immunity is the claim against the City to the extent of its liability insurance. The City argues (and the trial court held) that OCGA § 40-6-6 (d) (2) precluded the plaintiffs from proving causation on this claim. We disagree.

OCGA § 40-6-6 (d) (2) provides:

> When a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit, the law enforcement officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted

---

[25] *Smith v. Bulloch County Bd. of Commrs.*, 261 Ga. App. 667, 669 (1) (583 SE2d 475) (2003).

[26] *Tkacik v. Chriss*, 247 Ga. App. 86, 87 (543 SE2d 392) (2000).

[27] *Johnson v. Gonzalez*, 223 Ga. App. 646, 647 (478 SE2d 410) (1996).

with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit. Where such reckless disregard exists, the pursuit may be found to constitute a proximate cause of the damage, injury, or death caused by the fleeing suspect, but the existence of such reckless disregard shall not in and of itself establish causation.

Thus, this statute "expressly pertains to those special circumstances where a law enforcement officer in a law enforcement vehicle *is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit.*" (Punctuation omitted; emphasis supplied.) *Pearson v. City of Atlanta.*[28] There was no fleeing suspect here, let alone damages caused by the fleeing suspect; thus, this statute is wholly inapplicable to the case at bar. The trial court erred in relying on this statute as a ground for granting summary judgment to the City.

In summary, we reverse the summary judgment granted to the City and affirm the summary judgment granted to Officer Saxon.

*Judgment affirmed in part and reversed in part. Ruffin and Bernes, JJ., concur.*

DECIDED OCTOBER 24, 2007 — 

*Jones & Smith, Julian B. Smith, Jr., Brent C. Carter*, for appellants.

*Oliver, Maner & Gray, Patrick T. O'Connor, Sam L. Brannen*, for appellees.

---

[28] *Pearson v. City of Atlanta*, 231 Ga. App. 96, 97-98 (2) (499 SE2d 89) (1998).